IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:25CR193-KDB-DCK

UNITED STATES OF AMERICA )
    v. )
<u>MIGUEL QUINTANAR-FLORES</u> )

## Defendant's Memoranda regarding Bail

The Court should deny the Government's motion for a detention hearing under 18 U.S.C. § 3142(f)(2) because the Government cannot prove by a preponderance of the evidence that the case involves "a serious risk that the person will flee," or that he presents any danger whatsoever of obstructing justice or threatening witnesses. As such, the Court should release him on conditions.

Flores has extensive ties to the community, including owning property, owning a business, and family ties. He has no incentive to flee. If convicted, absent an upward departure, he falls into Zone A. Under Zone A, probation without any conditions is an authorized punishment. U.S.S.G. § 5B1.1(a)(1). Finally, statistics compiled by the Bureau of Justice Statistics reinforce Defendant's arguments. Defendants released on bail on immigration charges failed to appear in .6% of cases for the FY's 2011-2018.

### I. Procedural History:

On July 15, 2025, Flores was charged by indictment with simple illegal reentry under 18 U.S.C. § 1326(a). The statutory maximum is two years and a fine for that offense.

1

He made his initial appearance on July 18, 2025. At that hearing, the Government moved for detention under 18 U.S.C. § 3142(f)(2)(a). The Court continued the hearing on that motion until July 23, 2025, and set arraignment and detention hearings (if reached) for that same date. On July 23, 2025, that hearing was continued until July 28, 2025 on Flores's motion.

The initial question for the Court is whether to grant the Government's motion for a detention hearing. If the motion is denied, the Court should immediately set conditions of release. If the motion is granted, the Defendant will seek release at a detention hearing.

**II. Factual History**

Although Mr. Flores is alleged to be a citizen of Mexico, he has been in the United States for nearly 20 years. He owns a successful concrete company with a number of employees. That business has been registered with the Secretary of State since 2023.

Before that, he worked for Timothy Couse of Advanced Surface Solutions since 2008 in concrete. Mr. Couse, who the Defense anticipates will testify at the hearing on this issue, states that Flores is like a son to him, and the best worker he ever had. He became a family friend, and Mr. Couse loaned him Flores money to buy his house several years ago. That property is located at 337 Esplanade Street, Charlotte, NC.

A number of contractors who work with Flores have submitted similar letters to the Court. They state that they will have work ready for him immediately if he is released.

Flores also has a long-term girlfriend who he lives with. She has two young children who view him as a father. One of the older children writes that they celebrated Father's Day for him beginning in 2023.

Flores also has a brother, Saul Flores, who was ordered released at his detention hearing on July 23, 2025.

Flores has two prior convictions. One is for DWI in 2009. The other is for illegal entry in 2016, and he received 2 days jail time.

He has a pending charge for Assault with a Deadly Weapon with Intent to Kill. At Saul's detention hearing, Saul's counsel proffered to the Court that the assault involved the use of defensive force without a weapon when Saul was assaulted at a restaurant for changing the jukebox. That counsel also proffered that it was only Saul who played a part in the incident. Flores has appeared as directed for those charges and there are no failures to appear.

The report also notes a deportation followed closely by several failed attempts at entry to the United States.

### III. Legal Standard: A detention hearing in these circumstances is only permitted where the Government can demonstrate a serious risk of flight, obstruction, or danger to a witness of juror.

Because illegal reentry is not an offense described in 18 U.S.C. § 3142(f)(1), the Government must clear an evidentiary threshold under § (f)(2). This asks:

> 1) Is there a "serious risk" that the defendant "will flee," or
> 2) Is there a "serious risk" the defendant will obstruct justice, threaten witnesses, or threaten jurors?

3

The Government has not made any allegations thus far that there is a serious risk of obstruction or a danger to witnesses. The inquiry should be limited to serious risk of flight.

The Government has cited to the existence of an immigration detainer. Other courts, including within this circuit, have determined that the possibility that the Government will remove a defendant if they released pretrial is not the same as a risk of flight. *See, e.g., United States v. Suastegui,* 2018 WL 3715765 at *2 (W.D.Va 2018) ("the risk he will be involuntarily removed from the United States by ICE officials, *without more*, does not permit pretrial detention under § 3142(e)(1)"); *United States v. Ailon-Ailon,* 875 F.3d 1334, 1337 (10th Cir., 2017) (collecting cases) (("We agree ... that a risk of involuntary removal does not establish a 'serious risk that the defendant will flee' upon which pretrial detention may be based." (collecting cases)). *United States v. Santos-Flores,* 794 F.3d 1088, 1091–92 (9th Cir. 2015) (explaining that the "district court erred in relying on the existence of an ICE detainer and the probability of Santos-Flores's immigration detention and removal from the United States" in ordering that he be detained pending trial in part because the "risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition").[1]

---

[1] *See also, United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009); *United States v. Montoya-Vasquez*, 2009 WL 103596, at *5 (D. Neb., 2009); *United States v. Hernandez-Bourdier*, 2017 WL 56033, at *11 (W.D.Pa. 2017); *United States v. Hipolito Morales-Cortez,* No. 3:18C329 (M.D.Pa, 2018); *but see, United States v. Ong,* 762 F.Supp. 2d 1353, 1363 (N.D.Ga. 2010).

4

The initial and most important inquiry under the Bail Reform Act is whether a detention hearing is authorized. In order to clear the evidentiary threshold imposed by (f)(2)(A), the government must present "concrete information," not "mere conclusory assertions." *United States v. White*, 2021 U.S. Dist. LEXIS 100544, *20; 2021 WL 2155441 at *7 (M.D. Tenn. May 27, 2021).

Aside from preliminary detention pending a bail hearing under 18 U.S.C. § 3142(d)(2),(3) the Bail Reform Act is silent with respect to immigration detainers. *See, e.g., United States v. Ailon-Ailon,* 875 F.3d 1334, 1338 (10th Cir. 2017) ("Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings."). "Evidence of an ICE detainer alone does not merit detention under the Bail Reform Act," *United States v. Tapia,* 924 F. Supp. 2d 1093, 1097 (D.S.D. 2013), and have released defendants on conditions despite the existence of an ICE detainer. "The court would violate the Bail Reform Act if it detained defendant based only on the fact he is an alien and ICE has filed a detainer." *United States v. Urizar Lopez,* 2018 WL 3043328, *2 (S.D. Iowa June 19, 2018).

**IV. Argument: the Defendant has strong ties to the area and no incentive to flee. He is not a serious danger of flight.**

5

Flores has extensive ties to the community. He has a positive employment history, owns property, and has strong family ties. He was not arrested with false documents, nor did he attempt to hide his true identity.

He has no incentive to flee. His offense guidelines with a plea or after trial, dictate that the punishment should be probation. His risk of incarceration is limited to pretrial detention awaiting trial, or if he were to flee from prosecution and receive an enhancement for obstruction.

He lives with his girlfriend, and her 7- and 9-year-old children, who look at him like a father. He runs a highly successful concrete company that employs a number of workers. The contractors he works with respect him highly and will be present for his next (and likely every) court hearing.

His prior entries to the United States, while relevant to consideration, cannot meet the burden. *See, e.g., Figueroa-Alvarez,* 681 F.Supp.3d 1131, 1144 (D. Idaho 2023) (as to trustworthiness of the defendant, "illegal reentries simultaneously demonstrate the alien defendant's disregard for court orders and the criminal law *and* his or her strong desire to remain in the United States. Indeed, the very act of illegally reentering the United States . . . demonstrates a firm resolve to reside in this country.").

The risk that he would potentially flee to avoid deportation can be managed in this case. He has not used false documents or evaded authorities. He has a residence, a family, and a job, and can be located. Statistical evidence supports Defendant's position.

Statistical evidence further supports his position. In the Western District of North Carolina, of the 959 people released in the fiscal year ending in September 2024, only 3 failed to appear.[2] In the federal system, immigration cases have the lowest violation rate of *any* charges, with a failure to appear rate of less than one percent.[3]

**TABLE 7**
Defendants released pretrial with cases disposed in federal district courts, by type of release violation and most serious offense, FYs 2011–18

| Most serious offense | Number of released defendants | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
|---|---|---|---|---|---|---|
| All offenses | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| Violent | 7,228 | 26.9% | 1.1% | 25.0% | 2.3% | 17.1% |
| Property | 73,197 | 13.8% | 0.9% | 12.1% | 1.8% | 6.9% |
| Fraudulent | 60,529 | 13.3 | 0.8 | 11.7 | 1.9 | 6.6 |
| Other | 12,668 | 16.0 | 1.0 | 14.3 | 1.6 | 8.4 |
| Drug | 75,249 | 27.9% | 1.5% | 25.8% | 3.0% | 15.7% |
| Trafficking | 56,281 | 28.6 | 1.5 | 26.3 | 3.2 | 16.4 |
| Possession/other | 18,968 | 25.9 | 1.5 | 24.0 | 2.4 | 13.8 |
| Public order | 33,485 | 12.7% | 0.7% | 11.6% | 1.1% | 6.3% |
| Regulatory | 6,384 | 10.4 | 0.8 | 9.4 | 1.0 | 5.3 |
| Other | 27,101 | 13.3 | 0.7 | 12.2 | 1.1 | 6.5 |
| Weapons | 15,516 | 35.2% | 1.2% | 32.3% | 4.7% | 21.5% |
| Immigration | 35,454 | 7.4% | 0.6% | 6.8% | 0.6% | 4.8% |

### V. Conclusion

In *Suastegui,* the district court in the Western District of Virgina faced a similar inquiry. 2018 WL 3715765 (W.D.Va. 2018). It upheld a

---

[2] Pretrial Services Violations Summary Report, *available at* https://www.uscourts.gov/sites/default/files/2025-01/jb_h15_0930.2024.pdf.
[3] See Bureau of Justice Statistics Exhibit.

magistrate judge order releasing on home confinement a defendant charged with illegal reentry under 8 U.S.C. § 1326. *Id.* This Court should order the same.[4]

Defendant requests that the Court deny the Government's motion for a detention hearing and order Defendant's immediate release. Alternatively, the Court should set bail at a detention hearing if one is allowed.

This the 25th day of July, 2025.

Respectfully submitted,

s/ Rob Heroy
W. Rob Heroy
Bar No. 35339
Attorney for Defendant
Goodman, Carr, PLLC
301 S. McDowell St., #602
Charlotte, NC 28204
Phone: 704-372-2770
RHeroy@Goodmancarr.net

---

[4] *See also, United States v. Nieto-Garcia,* 2017 WL 4125268 (W.D.Va, 2017) (ordering release of defendant charged with illegal reentry); *United States v. Anguah,* 5:19-MJ-1103 (E.D.N.C., 2019) (J. Boyle); *United States v. Coreas-Batres,* 2018 WL 10561963 (E.D.N.C., 2018) (J. Boyle).

# CERTIFICATE OF SERVICE

I certify that I have served the foregoing **MOTION FOR BOND** on opposing counsel by submitting a copy thereof through ECF, to be sent to:

Assistant U.S. Attorney
Kenneth Smith

This the 25th day of July, 2025.

s/ Rob Heroy
W. Rob Heroy
Bar No. 35339
Attorney for Defendant
Goodman, Carr, PLLC
301 S. McDowell St., #602
Charlotte, NC 28204
Phone: 704-372-2770
RHeroy@Goodmancarr.net